683 F.2d 927
 WASTE SYSTEMS, INC., Plaintiff,
v.
CLEAN LAND AIR WATER CORPORATION, Defendant-Appellee,
v.
ROLLINS ENVIRONMENTAL SERVICES, INC. and Rollins
Environmental Services of Louisiana, Inc.,
Defendants-Appellants,
v.
Cyril HINDS, et al., Defendants-Appellees.
 No. 81-3388.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 25, 1982.
 
 Wallace A. Hunter, Baton Rouge, La., for defendants-appellants.
 Lawrence R. Anderson, Jr., Lemuel E. Hawsey, III, Baton Rouge, La., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Louisiana.
 Before GEE, RUBIN and GARZA, Circuit Judges.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 Jurisdiction in this case was based solely on diversity, now no longer existing because the action involving the diverse party has been settled. There remain only cross-claims originally asserted through ancillary jurisdiction between non-diverse parties. We conclude that, under the circumstances of this case, even if dismissal of the action for lack of subject matter jurisdiction, for the reasons cited in the appellants' brief, is not mandatory, there are no compelling reasons of judicial efficiency and economy justifying the district court's retention of jurisdiction. The action has not been tried. The issues involve complex problems of Louisiana law best suited for decision by a Louisiana court. Despite the age of the case, little litigation progress has been made. Whatever discovery has been accomplished can be preserved for use in state court. Under these circumstances, even if jurisdiction is discretionary, it would be an abuse of that discretion for a federal court to exercise it.
 
 
 2
 Therefore, we remand to the district court for entry of an order of dismissal for want of jurisdiction. The district court, of course, has jurisdiction to and shall enter an order affecting the funds in the registry of the court, and directing their disposition. We do not attempt to determine the correct disposition of those funds, but note only that, at the time the previous order was entered, the district court was of the opinion that it had subject matter jurisdiction over the action and that, whether or not the order was interlocutory in the technical sense, it was simply entered in the course of a continuing case. In the light of this opinion, the order should be directed to a final disposition of all funds in the court's registry.
 
 I.
 
 3
 Waste Systems, Inc. ("WSI"), a Texas corporation in the business of disposing of industrial and commercial waste, brought a diversity suit in federal district court in Texas against Clean Land Air Water Corporation ("CLAW"), a Louisiana corporation engaged in industrial and commercial waste disposal, alleging that CLAW had breached a contract with WSI for the disposal of industrial wastes[1] by selling a deep injection well to Rollins Environmental Services of Louisiana, Inc. ("RES of LA"). RES of LA is also engaged in the business of waste disposal. In addition to CLAW, WSI sued RES of LA, and Rollins Environmental Services, Inc. ("RES"), a Delaware corporation and the parent of RES of LA (hereafter RES and RES of LA are referred to jointly as RES)[2]. WSI claimed that RES had tortiously interfered with WSI's contractual rights under the WSI-CLAW contract.[3]
 
 
 4
 On the sale of the well, RES had paid CLAW $800,000 in cash and had given CLAW eight installment promissory notes equalling $2,100,000 in principal with interest to be paid at 73/4%. RES filed a cross-claim against CLAW claiming damages as a result of alleged misrepresentations made by CLAW in connection with the sale of the well. RES also asserted that CLAW was in liquidation, and that the liquidator intended to assign the promissory notes to the individual CLAW shareholders. RES was, therefore, concerned that the notes, as assets of CLAW, be preserved to satisfy any claim that RES might have against CLAW.
 
 
 5
 The Texas district court granted a temporary restraining order restraining CLAW from transferring the promissory notes to its shareholders or any third parties, and from accelerating the maturity of the promissory notes, and restraining RES from paying the first installment on the notes to CLAW on the condition that RES deposit the funds into the registry of the court. The district court relied on the representations of RES and WSI that there was an immediate danger that CLAW and CLAW's shareholders would attempt to cut off the claims of RES by assigning the promissory notes to holders in due course. The judge also ordered that the individual shareholders of CLAW be made parties to the action.
 
 
 6
 The parties subsequently gave their written consent to the entry of a preliminary injunction enjoining CLAW from transferring to any stockholder or third person the promissory notes, and from accelerating the maturity of those notes. In turn, RES was restrained and enjoined from making any principal or interest payments on the notes to CLAW on the condition that it pay the amounts owing into the registry of the court. Later RES asserted that it did not have the funds to make the note payments and could borrow such funds only at interest rates greater than 10%. It asked leave of court to substitute a letter of credit arrangement as a less expensive method to satisfy its obligation. The preliminary injunction was then extended and modified to provide that RES could deposit a letter of credit securing the principal and interest in lieu of making the actual payments.
 
 
 7
 WSI's claims against the defendants were eventually settled, and its suit was dismissed. After dismissal of WSI, the only remaining litigation was between CLAW, a Louisiana corporation, RES of LA, a Louisiana corporation, and the latter's parent, RES, a Delaware corporation. Venue was, therefore, changed to the Middle District of Louisiana, which is also the site of the injection well, and the letter of credit on deposit was transferred to the registry of that court.
 
 
 8
 After transfer to Louisiana, CLAW filed a motion to dissolve the preliminary injunction and the district judge granted the motion. RES filed a motion for reconsideration of the court's order and CLAW countered with a motion to require the clerk of court to obtain payment on the letter of credit and disburse the funds to CLAW. RES also filed a motion for leave to file an amended cross-claim, alleging a claim for redhibition and for a writ of sequestration of the "funds" in the registry of the court.
 
 
 9
 The district judge denied the motion of RES of LA to file an amended cross claim for redhibition because the claim had prescribed[4] and because RES had previously claimed a reduction in purchase price.[5] He denied the motion for a writ of sequestration because that motion depended on the amended claim for rescission entitling RES to become the owner of the purchase price. Because the claim for redhibition was denied, RES's interest in the funds to be applied toward the purchase price was not sufficient to allow a writ of sequestration. Further, the court granted CLAW's motion to obtain the proceeds of the letter of credit because
 
 
 10
 it is very clear that (RES) made these payments as payments on the notes, as payments became due, first of interest, and later of principal. (RES) paid either cash or letter of credit as a payment on the note. Now, a payment on the note can go nowhere except to the holder of the note, in this court's reasoning. The holder of the note is C.L.A.W., its individual shareholders, or perhaps technically at this stage its liquidator."
 
 
 11
 RES complains on this appeal of only two aspects of the district court's order: the denial of the motion for a writ of sequestration and the grant of CLAW's motion to obtain the proceeds of the letter of credit.
 
 II.
 
 12
 After oral argument, we requested supplemental briefs from the parties addressed to the question whether the federal district court had subject matter jurisdiction over the case after the dismissal of WSI, a Texas corporation. Jurisdiction over the subject matter of the original action by WSI against CLAW and RES was based on diversity of citizenship. 28 U.S.C. § 1332. WSI, the plaintiff, was incorporated in and had its principal place of business in Texas. None of the defendants were citizens of Texas and complete diversity was present as is required by Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).
 
 
 13
 For purposes of this opinion, we assume that the district court properly exercised ancillary jurisdiction over the cross-claims of CLAW and RES. After WSI's claims were settled and WSI was dismissed from the action and venue was changed to Louisiana, however, there was no independent basis of federal jurisdiction over the cross-claims. Complete diversity between the opposing parties was lacking because CLAW, a Louisiana corporation, its liquidators and individual shareholders, all Louisiana citizens, were opposing RES and RES of LA. For purposes of ascertaining diversity jurisdiction, RES of LA is deemed to be a citizen of Louisiana because its principal place of business is located in that state. 28 U.S.C. § 1332(c).
 
 
 14
 When the main action is dismissed for lack of subject matter jurisdiction, jurisdiction over the ancillary claims without an independent basis of federal jurisdiction also fails. 6 C. Wright & A. Miller, Federal Practice and Procedure § 1433, at 180 (1971).
 
 
 15
 Once the federal claim is no longer in the suit (for a reason other than lack of subject matter jurisdiction), considerations of judicial economy do not require the court to continue to hear the state law claim. Nonetheless, ... the Supreme Court has not yet ruled directly on this problem and several courts have held that if the main action is terminated on non-jurisdictional grounds, then the court may continue to hear the cross-claim even though it does not satisfy the requirements for federal subject matter jurisdiction.
 
 Id. at 181 (footnote omitted).[6]
 
 16
 As we recently stated in Joiner v. Diamond M Drilling Co., 677 F.2d 1035, 1042-43 (5th Cir. 1982),While (United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ) suggests that dismissal of appended state law claims is mandatory whenever the main federal claim is dropped prior to trial, in practice district courts have been allowed a measure of discretion in determining whether to retain their ancillary jurisdiction over appended state claims. However, this discretion is not unlimited....
 
 
 17
 Where the main federal action has been settled prior to trial, considerations of judicial efficiency and economy can no longer justify the continued exercise of federal jurisdiction over ancillary state-law claims; and considerations of comity and federalism militate in favor of dismissal. However, we recognize that a federal court may retain and adjudicate ancillary state-law claims after a pretrial settlement of the main federal action if a dismissal would unduly prejudice the parties.
 
 
 18
 (Footnotes omitted.) Following Joiner, we conclude that, even if the federal district court could exercise its discretion to continue to hear the ancillary state claims after the claim originally providing federal jurisdiction is settled and dismissed, there are no compelling reasons for the federal court to exercise its discretion in favor of the maintenance of federal jurisdiction in this case. Interests of judicial efficiency and economy would not be advanced. This action is still in its infancy, however long it has in fact been pending; no trial has taken place, any discovery could be utilized in a state court proceeding, and the action presents technical questions of Louisiana law that are, of course, most appropriate for resolution by a Louisiana state court judge.[7]
 
 III.
 
 19
 At the time the district judge entered the order granting CLAW's motion to obtain the proceeds of the letter of credit he was acting under the assumption the district court had subject matter jurisdiction over the cause of action. We remand to the district court for the entry of an order in the light of our opinion that the district court improperly exercised jurisdiction over this action after the dismissal of WSI. Of course, the district court still has jurisdiction to dispose of funds in the registry of its court whether or not it has subject matter jurisdiction over the cause of action.
 
 
 20
 Therefore, this action is REMANDED to the district court for a reconsideration of the order disbursing the proceeds of the letter of credit held in the registry of the court and for entry of an order dismissing the action.
 
 
 
 [1]
 The contract for disposal of industrial waste was originally entered into between Conservation Services, Inc. ("CSI"), a Texas corporation, and CLAW. CSI subsequently assigned the contract to WSI. CLAW approved and accepted the assignment
 
 
 [2]
 Both the Plaintiff's Original Complaint and the Plaintiff's First Amended Original Complaint referred only to Rollins Environmental Services, Inc., "a corporation organized under the laws of the State of Delaware or the State of New Jersey."
 
 
 [3]
 Specifically, WSI alleged that the sale of the deep injection well was an attempt by CLAW to avoid its obligations under the contract. WSI asserted that the deep injection well was the only site capable of legally disposing of "alkaline sulfide waste water," and that it was obligated, under separate contracts, to accept such waste water from various waste generators. Further, WSI alleged that RES would not accept waste from WSI, forcing it to violate contracts with waste generators, and that RES tortiously interfered with the contractual relations of WSI and CLAW by attempting to obtain WSI customers for its own advantage and in violation of the terms of the WSI-CLAW contract
 
 
 [4]
 The district judge stated: "The record does show that it has been more than a year since (RES) asserted its claim for reduction in price, and that it had knowledge of the alleged defect wehen (sic) it asserted that claim for reduction in price. The claim for redhibition therefore is prescribed."
 
 
 [5]
 "The argument that article 2543 also ... presents ... a barrier to asserting a claim of redhibition since (RES) has previously claimed a reduction in purchase price is also valid."
 
 
 [6]
 Compare Fairview Park Excavating Co. v. Al Monzo Constr. Co., 560 F.2d 1122, 1125 (3d Cir. 1977) ("once a district court judge has properly permitted a cross-claim under F.R.Civ.P. 13(g), ... the ancillary jurisdiction that results should not be defeated by a decision on the merits adverse to the plaintiff on the plaintiff's primary claim") and Parris v. St. Johnsbury Trucking Co., 395 F.2d 543, 544 (2d Cir. 1968) (ancillary jurisdiction over cross-claims between non-diverse parties exists since diversity does exist with respect to the main claim which was settled during trial) and Atlantic Corp. v. United States, 311 F.2d 907, 910 (1st Cir. 1962) ("If (the defendant) had a proper cross-claim against its co-defendants this gave the court ancillary jurisdiction even though all the parties to the cross-claim were citizens of the same state.... The termination of the original action would not affect this.") with McDonald v. Oliver, 642 F.2d 169, 172 (5th Cir. 1981) ("although the district court had ancillary jurisdiction to hear a cross-claim, it lost its ancillary jurisdiction when the underlying lawsuit was dismissed") and Federman v. Empire Fire and Marine Ins. Co., 597 F.2d 798, 811 (2d Cir. 1979) ("The stipulation of settlement also necessitates dismissal of (the) remaining cross-claims ... this being the recommended procedure when the jurisdiction-conferring claim is dismissed prior to trial.")
 
 
 [7]
 Furthermore, the filing of this suit in federal court interrupted the running of the prescriptive period under Louisiana law. La.Civ.Code Ann. art. 3518 (West Supp.1982); La.Rev.Stat.Ann. 9:5801 (1951)