**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bettie L. ZIMA, Defendant-Appellant,**

v.

**HOBART FEDERAL SAVINGS AND LOAN ASSOCIATION; First National Bank, Valparaiso; First Federal Savings and Loan Association of Gary; Sanitation Services, Inc.; State of Indiana; and Treasurer's Office of Lake County, Indiana, Defendants-Appellees.**

No. 84–1429.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 14, 1985.

Decided July 11, 1985.

David A. Willis, Nine E. Lincolnway, Valparaiso, Ind., for defendant-appellant.

Richard E. Anderson, Theodoros, Anderson & Tauber, Merrillville, Ind., for defendants-appellees.

Before WOOD and FLAUM, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

In early 1981, the United States brought suit in federal court to foreclose a lien on property owned by appellant, Bettie L. Zima, and named as additional defendants other creditors with liens on appellant's property. The primary lienholder, Hobart Federal Savings and Loan Association, filed a cross-claim against appellant and the other lienholders to establish its priority and to foreclose the mortgage. There was no independent federal jurisdictional basis for the cross-claim because Hobart's claim did not involve a federal question and no diversity existed among the defendants. The parties consented to having the proceedings held before a magistrate.

The magistrate granted, by default, Hobart's motion for summary judgment on its cross-claim against appellant. The judgment established the amount of Hobart's lien against appellant, ordered foreclosure of the mortgage, and established priorities among other lienholders for the disposition of the balance of the proceeds of the foreclosure sale. In the same judgment, the magistrate dismissed with prejudice the Government's claim. The principal question presented on appeal is whether the magistrate abused his discretion by denying appellant's rule 60(b)(4) motion to vacate judgment, which alleged that the judgment was void because the magistrate retained jurisdiction over the ancillary claim despite the disposition of the principal, and only federal, claim prior to trial.

## I. THE FACTS

The United States sued appellant and the other lienholders in federal district court in Indiana, where all defendants were residents. All the lienholders filed answers to the Government's complaint. In addition, Hobart filed a cross-claim against appellant and the other lienholders and a counterclaim against the Government, to which all parties, except appellant, filed answers. In their answers to the Government's complaint and Hobart's cross-claim, the other lienholders set forth information to establish the amount of their liens and the circumstances that demonstrated that appellant was in default. Appellant never filed an answer to any of the pleadings. In the

district court proceeding, appellant also changed her counsel three times for undisclosed reasons.

Several proposed settlement attempts failed to resolve the controversy. In February 1983, the Government filed a motion for summary judgment against appellant, with affidavits setting forth the amount of her indebtedness. In June 1983, Hobart filed a motion for summary judgment on its cross-claim, in response to which the other lienholders filed no objection, although they did request the court to determine the priorities of their liens.

The magistrate set a hearing date on the motions for summary judgment for December 1, 1983. On that morning, prior to the hearing, one of the other lienholders, the First National Bank of Valparaiso, satisfied the Government's claim of approximately $20,000 against appellant. Counsel for appellant did not attend the hearing pursuant to appellant's express instructions. At the hearing, counsel for Hobart represented to the magistrate, on behalf of itself and all lienholders, that the Government would file a motion to dismiss and a release that morning, disclaiming any interest in the property. Counsel proceeded to ask for judgment against appellant on its cross-claim, maintaining that it had first priority among lienholders. The amount that Hobart requested in principal, interest, and attorney's fees was about $31,000. Counsel also represented to the magistrate that appellant owed the other lienholders various sums, ranging from $5,600 owed to the State to over $260,000 allegedly owed to the First National Bank of Valparaiso. Counsel then requested ten days to prepare a default judgment against appellant, setting forth the foregoing information. The Government then confirmed to the magistrate that it had executed a release of mortgage and intended "this morning" to file a disclaimer of interest and a motion to dismiss.

At this point, the following colloquy took place, with Mr. Brattain representing the Government and Mr. Anderson representing Hobart:

THE COURT: You are going to submit that basically simultaneously with Mr. Anderson's proposed judgment?

MR. BRATTAIN: I am prepared to file a disclaimer and motion to dismiss today, your Honor.

THE COURT: My only reservation is that if the federal government gets out, that does not necessarily deprive me of jurisdiction, does it?

MR. ANDERSON: Probably. I think it would be better to put them in at the same time.

MR. BRATTAIN: I have no problems with that, your Honor.

THE COURT: I believe the only reason this is here is because the United States is a party.

MR. BRATTAIN: That is correct.

MR. ANDERSON: That is correct.

THE COURT: Why don't we do it simultaneously then so it's part of the same disposition?

. . . .

THE COURT: All right. Mr. Anderson, you say ten days would be enough to submit a judgment?

MR. ANDERSON: Yes, your Honor.

THE COURT: All right. I will get that entered as soon as I receive it.

In the discussion portion of the magistrate's decision, entered on December 9, 1983, the magistrate first took the Government's motion to dismiss under advisement. It then set out the amounts due to the various lienholders. The judgment portion of the decision, however, was more limited. The judgment held that Hobart was entitled to judgment by default in the amount of $31,325.28, with interest running from December 1, 1983. The judgment also declared that the mortgage was foreclosed and ordered the marshal to sell the property. Although the magistrate directed the marshal to apply any proceeds remaining after satisfaction of Hobart's judgment and payment of sale expenses to the debts owed to the other lienholders for "the full balance then still owing," the judgment did not reduce to a fixed sum the amounts

owed to any lienholder except Hobart. The judgment then concluded by "approving" the Government's "request" to dismiss its complaint with prejudice.

Entry of judgment finally elicited a response from appellant, who nonetheless failed to file a direct appeal from the magistrate's judgment. Instead, eighteen days after the judgment, appellant filed a motion to vacate, pursuant to rule 60(b)(4) of the Federal Rules of Civil Procedure, which grants relief from void judgments. The bases for the motion were, first, that the Government's announced intention to file a disclaimer and motion to dismiss on December 1 immediately divested the court of jurisdiction and, second, that appellant had no notice that the validity, amount, and priority of the liens of creditors other than the Government and Hobart would be adjudicated, nor was there any evidence to support the judgment as to the amounts of these liens. The magistrate requested briefing on the jurisdictional issue. After briefing, the magistrate determined that he had properly retained jurisdiction. He noted that the suit had been pending for almost three years, that Hobart's motion for summary judgment was pending for six months, and that the Government did not actually file its motion to dismiss until December 9, 1983. The magistrate further noted: "All interested parties, with the exception of [appellant], appeared for the scheduled hearing in anticipation of concluding this matter." Moreover, the magistrate observed that the case presented no novel or complex issue of state law but, rather, involved a straightforward foreclosure issue to which appellant failed to raise either a factual or a legal defense. Finally, the magistrate was also concerned by the fact that Hobart would be prejudiced by dismissal of the cross-claim because it could not have received "prompt relief" in state court; under Indiana law, there could be no decree of sale until at least three months after Hobart refiled its claim in state court. Ind.Code § 32–8–16–1.

On appeal, appellant claims that the magistrate abused his discretion by denying appellant's motion to vacate the judgment. She raises the same issues on appeal as she raised in support of her motion before the magistrate.

## II. DISCUSSION

Preliminarily, we question the actions that the magistrate took to attempt to retain jurisdiction after the Government indicated its readiness to file a motion to dismiss its complaint at the outset of the hearing on December 1, 1983. The magistrate expressed a reservation as to whether he would necessarily be deprived of jurisdiction in that event and was advised by Hobart that he "probably" would, but that it would be better to put the Government disclaimer and the summary judgment in at the same time. The parties being agreeable to this procedure, the magistrate concurred in so doing. As we shall demonstrate, the magistrate was mistaken in questioning that divestiture of jurisdiction would occur upon dismissal of the sole federal claim. Actually, he retained authority to determine, as a matter of discretion, whether to retain jurisdiction of the cross-claim. We question, however, the magistrate's agreeing to the delay procedure if it were done simply to preserve jurisdiction. Consequently, we shall examine the case as if the Government had filed its motion to dismiss on December 1, as it was prepared to do, and the magistrate had granted the motion forthwith while continuing to assert, as a matter of discretion, jurisdiction over the cross-claim. If appellant had appealed the magistrate's underlying judgment, we would then proceed to determine whether he had abused his discretion by retaining jurisdiction.

In fact, however, appellant seeks relief from the district court's denial of her rule 60(b)(4) motion to vacate the judgment. In part, the rule provides: "On motion and upon such terms as are just, the court may relieve a party of his legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judg-

ment is void...." As we recently have stated,

> The general rule in this circuit is that relief from a judgment under rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances. The decision to grant relief under rule 60(b) is left to the sound discretion of the trial court, and review of a trial court's decision to grant or deny rule 60(b) relief is subject to an abuse of discretion standard.

*C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1204–05 (7th Cir.1984) (citations omitted). Thus, the question presented by this appeal is not whether the magistrate abused his discretion in retaining jurisdiction, but whether he abused his discretion by denying appellant's motion to vacate. Yet, to understand the scope of our rule 60(b)(4) review, a brief discussion of the underlying jurisdictional issue is helpful.

■ The magistrate's authority to adjudicate Hobart's cross-claim against appellant is derived from the doctrine of ancillary jurisdiction. Because the United States was a party, the district court clearly had jurisdiction over the principal claim in the present suit. Hobart then brought its cross-claim pursuant to rule 13(g) of the Federal Rules. The cross-claim arose "out of the transaction or occurrence that is the subject matter ... of the original action" because the remedy sought by the Government required the sale of the property in which Hobart had a first-priority interest. As such, Hobart's claim constituted a compulsory cross-claim that was "ancillary" to the principal claim, and no independent jurisdictional basis was originally necessary to assert jurisdiction over the claim. Indeed, it is undisputed that no independent jurisdictional basis existed.

■ Upon settlement of the Government's claim on December 1, however, the sole initial basis for the assertion of federal jurisdiction evaporated. In such circumstances, a district court must reassess its earlier decision to exercise jurisdiction over claims that have no independent federal jurisdictional basis. In *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court formulated a new framework for the analysis of factors that a court must consider in deciding whether to accept jurisdiction over non-federal claims. The suit in *Gibbs* involved a state claim of malicious interference with contract appended to a federal, secondary boycott claim. Both claims between the nondiverse parties went to trial, and the trial court eventually entered judgment notwithstanding the verdict for defendant on the federal claim. Nonetheless, the Supreme Court held that the exercise of jurisdiction over the state claim was proper in the first instance. The test that the Court enunciated was that,

> if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to bring them all in one judicial proceeding, then, assuming the substantiality of the federal issues, there is *power* in federal courts to hear the whole.

*Id.* at 725, 86 S.Ct. at 1138 (emphasis in original) (citations omitted). The Court emphasized "that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them...." *Id.* at 726, 86 S.Ct. at 1139 (footnote and citation omitted). The courts have applied the analysis developed in *Gibbs*, a pendent jurisdiction case, to suits like the present case that raise questions about the retention of ancillary jurisdiction after dismissal of the federal claims. *See, e.g., Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 458 (7th Cir.1982), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145; *Waste Systems, Inc. v. Clean Land Air Water Corp.*, 683 F.2d 927 (5th Cir.1982); *Joiner v. Diamond M Drilling Co.*, 677 F.2d 1035 (5th Cir.1982).

■ Courts have interpreted *Gibbs* as imposing a two-step analysis to determine the propriety of retaining jurisdiction after federal claims drop out of a case. *See, e.g., Stamford Board of Education v. Stamford Education Association*, 697 F.2d 70, 72 (2d Cir.1982). First, a district court must determine if it has the *power* to exercise jurisdiction over the ancillary claims. *Id.* That determination depends upon whether the federal claim is substantial and whether there is a common nucleus of operative fact for both the federal and state claims. In this case, appellant concedes that both the substantiality and the "common nucleus" elements were present to establish the district court's power, in the first instance, to adjudicate the state claims. Appellant contends, however, that the district court automatically lost its power to adjudicate those claims immediately upon the Government's dismissal of its claim. Appellant's contention is entirely unsupportable. Once power is rightfully conferred, the district court retains the power to consider the ancillary claims. *Fairview Park Excavating Co. v. Al Monzo Construction Co.*, 560 F.2d 1122, 1125 (3d Cir.1977). *Cf. Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 479 (3d Cir.1979) (pendent jurisdiction case).

Of course, the existence of power alone does not imply that the district court should always exercise that power. Thus, the second step in the *Gibbs* analysis is to determine whether to retain jurisdiction, a matter relegated to the exercise of the district court's discretion. *Stamford Board of Education v. Stamford Education Association*, 697 F.2d at 72. In other words, does the retention of jurisdiction serve the interests of "judicial economy, convenience and fairness to litigants"? *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. The federal appeals courts in general, *see, e.g., Federman v. Empire Fire & Marine Insurance Co.*, 597 F.2d 798, 811 (2d Cir. 1979); *Hodge v. Mountain States Telephone & Telegraph Co.*, 555 F.2d 254 (9th Cir.1977), and this court in particular, *American National Bank & Trust Co. v. Bailey*, 750 F.2d 577, 581 (7th Cir.1984);

*Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235, 1240 (7th Cir.1984); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 n. 3 (7th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985), have indicated a strong preference for the dismissal of pendent or ancillary claims whenever the district court disposes of the federal claim or claims prior to trial. Indeed, in cases involving complex or novel issues of state law, the appellate courts have held that it is an abuse of discretion to retain jurisdiction after the federal issue is disposed of at trial or even on appeal. *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 187–88 (7th Cir.1984); *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir.1976); *Webb v. Bladen*, 480 F.2d 306, 309 (4th Cir.1973).

■ Nonetheless, the Supreme Court's dictum that "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well," *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139 (footnote omitted), has been ignored or limited on many occasions, even by the Court itself. *Rosado v. Wyman*, 397 U.S. 397, 404, 90 S.Ct. 1207, 1213, 25 L.Ed.2d 442 (1970); *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 903–04 (9th Cir.1983); *Nationwide Mutual Fire Insurance Co. v. T & D Cottage Auto Parts & Service, Inc.*, 705 F.2d 685, 687 (3d Cir.1983) (mooting of principal claim before trial does not divest court of jurisdiction over ancillary claims); *Stamford Board of Education v. Stamford Education Association*, 697 F.2d at 72 (proper to maintain jurisdiction over ancillary claims despite settlement of federal claim before trial); *Cenco Inc. v. Seidman & Seidman*, 686 F.2d at 458; *IMFC Professional Services, Inc. v. Latin-American Home Health, Inc.*, 676 F.2d 152 (5th Cir. 1982). After dismissal of federal claims, the district court must focus on factors such as judicial economy, fairness (particularly the prejudicial passage of state limitations periods) and convenience to the litigants, and the novelty or difficulty of the

state law issues involved to determine whether to retain ancillary jurisdiction.

In fact, the magistrate in the present case never explicitly exercised his discretion to retain jurisdiction. His actions indicate that he may have incorrectly assumed that he had no discretion to retain jurisdiction. In many cases involving a district court's failure to appreciate that the continued exercise of pendent or ancillary jurisdiction is discretionary, the appellate courts have remanded the case to the district court for an explicit exercise of its discretion. *See, e.g., Buethe v. Britt Airlines, Inc.,* 749 F.2d at 1239–40 n. 4, 1242; *Rheaume v. Texas Department of Public Safety,* 666 F.2d 925, 931–32 (5th Cir.1982) (per curiam), *cert. denied,* 458 U.S. 1106, 102 S.Ct. 3484, 73 L.Ed.2d 1367; *Webb v. Bladen,* 480 F.2d at 309. *See also Transource International, Inc. v. Trinity Industries, Inc.,* 725 F.2d 274, 290 (5th Cir. 1984) (retrial necessary only on state claims; district court must again decide whether to retain jurisdiction); *Cenco Inc. v. Seidman & Seidman,* 686 F.2d at 458 (same). We do not deem such a disposition to be necessary in this case. In light of the willingness of the magistrate to retain jurisdiction, and his analysis of the appropriate factors in his denial of appellant's rule 60(b)(4) motion, it is evident to this court that, had he realized that he had the discretion to retain jurisdiction after dismissal of the federal claim, he would have decided to retain jurisdiction in any event. *Cf. Sparks v. Hershey,* 661 F.2d 30, 33 (3d Cir.1981) (per curiam).

As mentioned above, had appellant taken her appeal from the magistrate's initial decision, we would have had to determine whether he abused his discretion by retaining jurisdiction. The appeal, however, is from the magistrate's denial of appellant's rule 60(b)(4) motion to vacate. Appellant claims that the magistrate's initial decision is void for lack of jurisdiction. The federal courts give the concept of void judgments a very restrictive interpretation. Thus, we have stated that "the concept of a void judgment is narrowly drawn in the interest of finality. A void judgment has been nar-

rowly defined, therefore, to exist only where a court *usurps power* by rendering a judgment over matters beyond the scope of authority granted to it by its creators." *Ben Sager Chemicals International, Inc. v. E. Targozs & Co.,* 560 F.2d 805, 812 (7th Cir.1977) (emphasis added) (citations omitted). Similarly, the First Circuit, in reversing the grant of a rule 60(b)(4) motion to vacate, has stated:

> A void judgment is one which, from its inception, was a complete nullity and without legal effect. In the interest of finality, the concept of void judgments is narrowly construed. While absence of subject matter jurisdiction may make a judgment void, *such total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction.* A court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void. Only in the rare instance of a *clear usurpation of power* will a judgment be rendered void.

*Lubben v. Selective System Board No. 27,* 453 F.2d 645, 649 (1st Cir.1972) (emphases added) (citations omitted). *See also Honneus v. Donovan,* 691 F.2d 1, 2–3 (1st Cir.1982) (per curiam) (erroneous assumption of diversity jurisdiction renders judgment erroneous, subject to reversal on direct appeal, but not void, thus precluding rule 60(b)(4) relief); *Kansas City Southern Ry. v. Great Lakes Carbon Corp.,* 624 F.2d 822, 825 (8th Cir.1980) (en banc) (rule 60(b)(4) relief is appropriate only "where there is a plain usurpation of power"), *cert. denied,* 449 U.S. 955, 101 S.Ct. 363, 66 L.Ed.2d 220.

■ In the present case, appellant concedes that the magistrate initially had the power to exercise jurisdiction over the ancillary claims. The authorities previously cited indicate that the power remains even after the dismissal of the underlying federal claim, with retention a matter of discretion. Yet, under rule 60(b)(4), a judgment is void only if the court has no power to adjudicate the issues before it. The magistrate having the power to determine the

ancillary issues, we hold that he did not abuse his discretion by denying rule 60(b)(4) relief because the judgment was not void. Thus, despite the closeness of the question whether the magistrate would have abused his discretion, if the issue had been raised on direct appeal, by retaining jurisdiction over the ancillary claims,* we need not reach that issue.

■ Appellant also contends that the judgment is void because the magistrate allegedly denied her due process by deciding issues beyond the scope of the pending motions for summary judgment. Although the magistrate made a number of "findings" concerning appellant's indebtedness to the various lienholders, the only creditor who was adjudged to have a particular amount owing to it was Hobart. Appellant does not contest the amount that the magistrate awarded in favor of Hobart. As to the other creditors, the actual judgment only established the existence of creditor status and the priorities among creditors,

neither of which appellant claims to be error. As the footnote above indicates, any adjudication of Hobart's claim required the magistrate to order the sale of appellant's property. The establishment of priorities was a necessary outgrowth of the relief sought in Hobart's motion. Appellant conceded that she had notice of the hearing on Hobart's motion and ordered her attorney not to attend.

Appellant is particularly concerned that the magistrate's findings of amounts owed to the other lienholders would have *res judicata* effects at the time of the disposition of proceeds. Yet, the judgment did not establish any amount that the other lienholders should take, but merely referred to "the full balance then still owing." There is no final judgment with respect to the amounts owed by appellant to lienholders other than Hobart. We note that, at any later hearing on disposition of the proceeds, the lienholders will carry the burden of establishing "the full balance

---

* The chief factor against retaining jurisdiction, and it would have been a key consideration, was that the federal claim was settled before trial. *Buethe v. Britt Airlines, Inc.,* 749 F.2d at 1240. Also, because the statute of limitations has not yet run, Hobart would not be precluded from bringing his cross-claim as an independent claim in state court. *See American National Bank & Trust Co. v. Bailey,* 750 F.2d at 581. On the other hand, the disposition of the federal claim was not due to lack of subject matter jurisdiction, *cf. Christison v. Groen,* 740 F.2d 593, 597 (7th Cir.1984); *Waste Systems, Inc. v. Clean Land Air Water Corp.,* 683 F.2d at 930, lack of substantiality of the federal claim, *cf. Uptown People's Community Health Services Board of Directors v. Board of Commissioners,* 647 F.2d 727, 732–33 (7th Cir.1981), *cert. denied,* 454 U.S. 866, 102 S.Ct. 328, 70 L.Ed.2d 167; *Brunswick v. Regent,* 463 F.2d 1205, 1207 (5th Cir.1972) (per curiam), nor was it on a rule 12(b)(6) motion, *cf. Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d at 1106 n. 3. Furthermore, although the magistrate had not expended a great amount of effort in administering the case, he had held a pretrial conference and two status conferences in addition to the hearing on the motions for summary judgment. Moreover, the summary judgment motions had been on file for months, and, in light of the failure of appellant to contest any allegations in any of the court papers and her explicit instruction to counsel not to appear at the hearing, it appeared likely that the magistrate would dispose of all

claims at the time of the hearing. Satisfaction of the Government's claim, had it not been settled, and Hobart's cross-claim required that appellant's property be sold and priorities determined for the disposition of the proceeds. Finally, in contrast to cases such as *Buethe,.supra,* and *Financial General Bankshares, Inc. v. Metzger,* 680 F.2d 768 (D.C.Cir.1982), the present case involved no novel or complex issues of state law.

While appellant claims that the interplay of the facts "require an Indiana state court judge's review," we take judicial notice of the fact that the magistrate below was undoubtedly schooled in the niceties of Indiana law before achieving his office. *See Gooding v. Wilson,* 405 U.S. 518, 524, 92 S.Ct. 1103, 1107, 31 L.Ed.2d 408 (1972) (Court finds "necessarily" persuasive the interpretation given a Georgia statute by a district court judge from Georgia and a panel of the old Fifth Circuit that included one former Georgia practitioner). *Accord Brockett v. Spokane Arcades, Inc.,* —— U.S. ——, ——, 105 S.Ct. 2794, ——, 86 L.Ed.2d 394, (1985); *Morin Building Products Co. v. Baystone Construction, Inc.,* 717 F.2d 413, 416–17 (7th Cir.1983). Although the magistrate certainly would have been acting within his discretion had he refused to continue to exercise jurisdiction, whether he abused that discretion by retaining jurisdiction is a different and difficult question, which we need not resolve because of the procedural posture of this case.

then still owing." Consequently, because appellant does not claim error in any part of the judgment, and because the other lienholders will have to establish the amount that appellant owes to them, the magistrate's judgment did not exceed the scope of the motions then before him. There has been no violation of due process. Therefore, the judgment is not void.

### III.  CONCLUSION

For the foregoing reasons, we hold that the magistrate did not abuse his discretion when he denied appellant's motion to vacate the judgment. Accordingly, the judgment of the magistrate is AFFIRMED.