(No. 34884.—

LA SALLE NATIONAL BANK, as Trustee, *et al.,* Appellees, *vs.* THE VILLAGE OF RIVERDALE, Appellant.

*Opinion filed March 20, 1959.*

152

HERBERT F. ZORNOW, and THOMAS A. MATTHEWS, both of Chicago, (BYRON S. MATTHEWS, of Chicago, of counsel,) for appellant.

FREDERICK S. STEIN, of Chicago, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The village of Riverdale, as defendant-appellant, appeals directly to this court from an order of the circuit

court of Cook County directing a writ of *mandamus* to issue compelling the village to issue certain building permits to plaintiffs and to permit plaintiffs to install certain combination storm and sanitary sewers.

The trial judge has certified that the validity of a village ordinance is involved and that the importance of the question requires an appeal directly to this court.

There is no dispute as to any material factual issue. Plaintiffs are the owners of a large subdivision consisting of ten square blocks with 238 homesites in the village of Riverdale. The village is situated immediately adjacent to the city of Chicago. Blue Island-Riverdale Road, or 136th Street, forms the north boundary of the subdivison, and 138th Street forms the south boundary, with six north-south streets and 137th Street laid out, but there are no improvements of any kind on the streets and no houses presently in the subdivision.

In 1926, while the subject land was farm land, the village of Riverdale instituted and carried through a special assessment proceeding for the installation of a combination storm-water and sanitary sewer on 138th Street and sewers in other portions of the village connecting therewith. Such proceeding was completed in compliance with the law and a final order of confirmation entered after the certificate of cost and completion had been filed. The special assessment ordinance created a drainage district and the land here involved was included therein. Such land, which was then farm land but within the village limits, had a special assessment of $18,286.13 levied against it, of which amount $3,610.93 applied to that portion of the land now involved. The full amount of the assessment has heretofore been paid.

Section 2 of the 1926 special assessment ordinance contained a clause reading as follows: "The owners and occupants of the land, pieces and parcels of land lying within

such drainage district hereinbefore described shall at all times hereafter be entitled to the use of and the benefits of the sewers provided by this ordinance. Right, permission, privilege and authority are hereby given and granted to the present and future owners and occupants of the land within such drainage district to open and connect all ditches and sewers which now exist or may hereafter be constructed within said district into and with the sewers described in this ordinance." The sewer built pursuant to such ordinance is a combination drain-water or storm sewer and sanitary sewer, situated on 138th Street adjoining plaintiffs' property.

In 1929, after installation of the sewer and completion of the special assessment proceeding, a plat of the subdivision covering the property in question was duly filed and recorded. However, the property was then used for farming purposes only and has continued to be used for such purposes or to stand idle to the present time.

In 1952 the village of Riverdale duly enacted an ordinance pursuant to power granted by the Illinois legislature in 1949 (Ill. Rev. Stat. 1949, chap. 24, par. 23—70.1) whereby the construction of a residence building was prohibited except on a street improved with water, sewer and pavement.

Plaintiffs seek to compel the issuance of 42 permits to construct residence buildings in the subdivision. The plans and specifications for these buildings comply with the building ordinances of the village and the plaintiffs have paid or offered to pay the necessary fees in connection therewith. All of the sites on which plaintiffs seek to build these 42 residence buildings are located on streets which at present have no pavement, no water, no sidewalks, and no sewers of any kind. All are on streets lying north of 138th Street, which street has a pavement and a sewer and which street is the southerly boundary of plaintiffs' subdivision.

Plaintiffs have also requested the right, and seek to compel the granting of permission to connect to the existing combination storm and sanitary sewer certain lateral combination storm and sanitary sewers to be constructed in the subdivision at plaintiffs' cost, which laterals are to service the newly constructed residences.

In 1956 plaintiffs applied to the village for permission to install a separate sanitary sewer system in the subdivision to connect with the 138th Street sewer. At the same time they applied for permission to install a separate storm-water sewer with a different outlet. Such plans were approved by the village except for the proposed storm sewer outlet. These were the only plans or specifications for a sewer system to serve the subdivision before the court at the trial. No plans or specifications for a combined storm and sanitary sewer system were before the court.

The sewer on 138th Street and other sewers in the village now flood occasionally, particularly in time of heavy rains, and are carrying about their full load. In recent years, and since the inception of this litigation up to the time of trial, permits have been issued by the village to persons other than plaintiffs for the construction of residences to be serviced by the combination sewer on 138th Street, all on lines installed as part of the sewage system in 1926.

The village refused to issue the building permits in question because of the prohibition contained in the 1952 village ordinance. It refuses permission to construct a combination storm and sanitary sewer flowing into the 138th Street combination sewer but will permit a sanitary sewer to be so constructed if other provision is made for storm-water drainage.

Plaintiffs' position is that the 1926 special assessment ordinance and proceedings thereunder granted an absolute right to the owners and occupants of the land assessed, to

the use of the improvement under the circumstances here in evidence, that the 1952 village ordinance has no application, and that *mandamus* is a proper remedy.

Defendant urges a reversal of the trial court order on the theory that the 1952 village ordinance validly prohibits the erection of the buildings here proposed, that the village has the power to regulate the use of a special assessment sewer improvement, that the special assessment ordinance did not create a contract preventing such regulation, and that no clear right to *mandamus* was proved.

The law with reference to the levying of a special assessment seems to be well settled. In order to levy a special assessment for the construction of a sewer, it is necessary that a drainage district be created so that any land assessed must be benefited by the improvement and must be within the boundary of the drainage district so as to be assured of a present or future use of the improvement. *Title Guarantee and Trust Co.* v. *City of Chicago,* 162 Ill. 505; *Mason* v. *City of Chicago,* 178 Ill. 499; *City of Lawrenceville* v. *Hennessey,* 244 Ill. 464.

In *Catholic Foreign Mission Society of America* v. *Village of Glen Ellyn,* 339 Ill. App. 565, a set of facts analogous to those here presented was involved. The improvement there in issue was a sanitary sewer only. The land levied against was subsequently disannexed from the village of Glen Ellyn after the assessment was paid. The village sought to prevent use of the sewer because the land was no longer within its corporate boundaries. The court in its opinion there said, at page 571:

"In the instant case, appellant, in passing the ordinance providing for the sanitary sewer district, included therein, as a part of said ordinance, the provision that all of the land within the district should at all times thereafter be entitled to the use and benefit of the sewer improvement, together with the right to connect with the sewer, and

thereby exercised its discretion in favor of the right of the owner of property to connect with the sewer and the property of appellee having been assessed upon the basis of such benefit and right, the Board of Trustees of the Village is without authority to withdraw or suspend the right which it has heretofore granted. The property of appellee, in the first instance, could only have been assessed upon the finding that it would receive a present benefit from the improvement, or that it would have an assured future enjoyment of benefit to be derived from it. [Citations.] The ordinance therefore created an obligation, binding upon appellant to permit the connection, and binding upon the appellee to pay the assessment made against its property."

At page 572, the court further said:

"In the instant case, the provisions of section two of the ordinance expressly granted to the owners of the lands lying within the then described district the uses of the improvements, and appellant should not now be permitted to withdraw the privilege granted appellee to open and connect its sanitary sewers into the sewers of appellant. To be permitted to do so was the very foundation of the right of appellant to levy the special assessment against the property now owned by appellee. The fact that petitioner's land is now outside the corporate limits of the Village does not warrant the abrogation of the right previously conferred by ordinance and relied upon by the then owners of appellee's lands when the assessment levied against the property was paid."

We approve and adopt what the court there said as a correct statement of the law applicable to the instant case. The special assessment ordinance and payment of the assessment thereunder created a vested right in the property in question to use of the improvement equally with all other property in the district so assessed. The fact that use

of the improvement by other lands in the district may over-load the improvement does not in and of itself warrant the abrogation of the right previously conferred by ordinance and relied upon by owners of the land when the assessment was paid. The present plaintiffs, as owners of land within the drainage district have paid a special assessment for the benefits guaranteed by an assured future use of the improvement, cannot be arbitrarily denied a use of such improvement at least equal to the use thereof by other property owners merely because of changed circumstances.

The statement of this principle is not a denial or abrogation of the police power vested in the municipality to regulate the use of a sewer improvement. Clearly the control of the use of public sewers is a matter affecting the public health and safety, and is subject to reasonable and equitable regulation for such purposes. The owners of property assessed to pay for the cost of a public improvement must comply with any reasonable regulation imposed by the municipality on such use. *Campbell* v. *City of Chicago*, (7th Cir. 1941,) 119 F.2d 1014.

However, if the municipality could levy a special assessment and collect the money from the landowners and then refuse certain of the landowners the right to use the improvement for which the assessment was made and paid, while permitting such use by others, it would result in a gross violation of both the Illinois constitution and the constitution of the United States. It is true, as stated in *People ex rel. Baker* v. *Strautz*, 386 Ill. 360, at page 364, that "The constitutional guaranties that no person shall be deprived of life, liberty or property without due process of law, and that no State shall deny to any person within its jurisdiction the equal protection of the laws, were not intended to limit the subjects upon which the police power of a State may lawfully be asserted in this any more than in any other connection." But such constitutional guar-

anties were intended to limit the manner in which the police power may lawfully be exercised, and police regulations found to be arbitrary, oppressive, unreasonable or unequal will be nullified.

Here the 1952 village ordinance was adopted pursuant to specific statutory authority. Although a paragraph of the preamble thereto indicates that a motive in its adoption was to prohibit septic tanks, yet the body and substance of the ordinance is general in its application, unambiguous, and perfectly valid on its face. Insofar as the issuance of the requested building permits under the facts as here presented is concerned, the denial of issuance thereof because of lack of streets improved with water mains and sanitary sewers was fully warranted. Such ordinance, however, furnishes no valid basis for the denial of the right to lay a combination storm and sanitary sewer lateral in the streets at plaintiffs' expense and to connect the same to the 138th Street main sewer. If so interpreted it would be invalid as applied to plaintiffs because not uniform in application, and because arbitrary, unreasonable, a denial of equal protection, and a taking of property rights. The plaintiffs have no right to issuance of a building permit for construction of the residential buildings until such time as the streets in the subdivision are made to comply with the ordinance. The village has no right to prevent plaintiffs from installing combined storm and sanitary sewers in the streets of the subdivision and connecting them with the 138th Street main in order to qualify under the 1952 ordinance for a building permit, so long as others in the drainage district are permitted to make such use of the 138th Street main without limitation.

The fact that the sewer system of the village is presently overloaded and the addition of storm-water as well as sanitary sewerage to the 138th Street main may cause a health hazard is no justification for denying to plaintiffs

and to plaintiffs alone their rights under the special assessment ordinance.

It is well established that a writ of *mandamus* will not be issued unless the plaintiff shows a clear and undisputed right to the relief sought. (*People ex rel. Dunderdale* v. *City of Chicago,* 327 Ill. 62; *People ex rel. Brownrigg,* v. *Brentano,* 259 Ill. 359; *Case* v. *City of Sullivan,* 222 Ill. 56.) Cities and villages in Illinois under the Revised Cities and Villages Act (Ill. Rev. Stat. 1957, chap. 24, article 23) are given control over the establishment and opening of streets and over the type of improvement to be put into such streets. Although the village under the circumstances here in evidence has no right or power to prohibit plaintiffs from discharging surface or storm water or sanitary sewage into the public sewer in 138th Street and do have the duty to permit such a connection by plaintiffs, yet they do have the power, right and privilege to reasonably control the plans, specifications and general construction of the proposed improvement. No plans and specifications for such combined storm and sanitary sewer are in the record, and none were introduced in evidence. The village had given clear indication that it would approve no plans whatsoever for such combined sewer, but would require a separate outlet for a storm sewer. This it cannot do and thereby deprive plaintiffs of their rights. Although the village can be compelled under proper circumstances to permit installation of a combination sewer in its public streets as here indicated, yet a writ of *mandamus* should not be issued to require such action unless and until plans and specifications therefor have been submitted and the desired or proposed improvement made definite and certain.

From what has been said it appears that the writ of *mandamus* ordered to be issued by the trial court was premature for want of definiteness and certainty as to details in the plans and specifications for the improvement. How-

ever the plaintiffs have definite rights and the village has definite obligations which it was felt desirable to clarify at this time in order to minimize or avoid future litigation between the parties, although the trial court judgment must be reversed.

*Judgment reversed.*