L. Dow Nichol, Jr. and Elsie L. Nichol, Plaintiffs-Appellants, v. The Village of Glen Ellyn, a Municipal Corporation, DuPage Trust Company, as Trustee Under a Trust Known as Trust #867, Emil J. Marslek, et al., Defendants-Appellees.

Gen. No. 67–68.

Second District.

November 29, 1967.

Rathje, Woodward and Dyer, of Wheaton, Tenney, Bentley, Guthrie, Askow and Howell, and Edwin H. Conger, of Chicago, for appellants.

J. Edgar Kelly, of Glen Ellyn, and Lyle H. Rossiter, of Chicago, for appellees.

MR. JUSTICE MORAN delivered the opinion of the court.

This action was brought to enjoin the defendants from using an easement which the plaintiffs allegedly granted for private use. Essentially, the defendants argue that the easement was granted for the public use, and its benefits are not to be limited exclusively to the owners of the lots in the plaintiffs' subdivision.

In 1951, plaintiffs purchased the property in question, which was annexed to the defendant Village of Glen Ellyn the following year. Shortly thereafter, plaintiffs submitted a plat of subdivision with the Village which was approved in due course. The plat of subdivision consists of eleven lots surrounding a street known as Elm Park Drive. Elm Park.Drive dead-ends at Lot 3, which is the lot plaintiffs retained for their own residence, and which is the only lot in the subdivision which abuts both Elm Park Drive and the preexisting St. Charles Road. The plat further discloses a "10 Ft. Public Utility Easement" running continuously across the rear of each of the eleven lots in the subdivision. In addition, the plat shows a "10 Ft. Easement for Public Utilities" across Lot 3, which latter easement connects the above described easement with St. Charles Road.

A Village ordinance in effect at the time of the annexation and subdivision of plaintiffs' subdivision required the installation of sanitary sewer facilities in all new subdivisions. The Village engineer prepared plans and specifications for the extension of Village water and sewer

mains throughout the subdivision for service to all of the lots. An eight-inch lateral sewer line was extended from the fifteen-inch trunk line sewer in St. Charles Road across the said "10 Ft. Easement for Public Utilities" of Lot 3 and then down through Elm Park Drive.

The plaintiffs paid the Village for the plans and specifications prepared by the Village engineer, and the Village advertised for bids for construction of the sewer. The construction job was let to the bidder accepted by the plaintiffs and, although the plaintiffs paid the cost of the construction, the job was done pursuant to a contract with the Village.

Until the filing of this suit, the plaintiffs exercised no maintenance or other dominion over the sewer system in question. Fees for connections to the system were paid to the defendant Village by the lot owners in the subdivision. The plaintiffs never requested or received any inspection or connection fees. When stoppage in the system occurred on at least two occasions, the Village sewer department was called and serviced the system.

In 1966 the plaintiffs brought this suit to enjoin the connection to the sewer system in question by the property owners in the subdivision immediately to the south of the plaintiffs' subdivision. From an order dismissing their complaint, the plaintiffs appeal on the theory that the easement over Lot 3 is for the private use of only the owners of the lots in the plaintiffs' subdivision. It is further argued that it was error for the court below not to have permitted plaintiffs to testify as to their intention in granting the easement.

■ ■ We do not believe that the trial court erred in its determination that members of the public acquired a right to the benefit of the easement over plaintiffs' property. In the face of the plat of subdivision and plaintiffs' conduct prior to the filing of their complaint, no other conclusion would be possible. The law was stated in

Wattles v. Village of McHenry, 305 Ill 189, 192, 137 NE 114 (1922), as follows:

> "No law is better settled in this State than that which controls this case. . . . The sale and conveyance of lots according to a published plat implies a grant or covenant to the purchaser that streets, alleys *and other public places indicated as such upon the plat* shall be forever open to the use of the public, free from all claims of interference of the proprietor inconsistent with such use. (Thompson v. Maloney, 199 Ill 276; Stevenson v. Lewis, 244 id. 147.)" (Emphasis added.)

To borrow the words of the Court in the Wattles opinion, the easements in question were "public places indicated as such upon the plat." The plat itself describes the easements as "Easement for Public Utilities" and "Public Utility Easement." Although plaintiffs now argue that the term "public" modifies the word "utilities," no authorities are cited for this proposition. On the other hand, the term "public utility" has been defined in 73 CJS 990, § 1, as follows:

> "The term 'public utility' implies a public use carrying with it the duty to serve the public and treat all persons alike, and it precludes the idea of service which is private in its nature and is not to be obtained by the public."

Plaintiffs' theory is not advanced by separating the words "public" and "utility." Thus, in State Public Utilities Commission v. Monarch Refrigerating Co., 267 Ill 528, 108 NE 716 (1915), in determining whether a certain business was a public utility, the Supreme Court observed the following (id. at 533):

> "As to what is meant by the word 'public' when used in this connection, it is very difficult to define or

explain it in any simpler language than by the use of the word 'public' itself. The Century Dictionary thus defines the word 'public': 'Of or belonging to the people at large; relating to or affecting the whole people of a State, nation or community; . . . not limited or restricted to any particular class of the community.' The New International Dictionary defines it: 'Of or pertaining to the people; relating to or affecting a nation, State or community at large.' In 32 Cyc 748, one of its meanings is given as 'open to all the people; shared in or to be shared or participated in or enjoyed by the people at large; not limited or restricted to any particular class of the community.' "

■ If the plaintiffs had indeed intended to create an easement for private use by the owners of lots in their subdivision, they could easily have so provided on their plat. People v. Ricketts, 248 Ill 428, 431, 94 NE 71 (1911). But even if the terms "public utility easement" or "easement for public utilities" were ambiguous, which we do not mean to imply, we would be required to construe such ambiguity against the plaintiffs on the strength of City of Chicago v. Hogberg, 217 Ill 180, 183, 75 NE 542 (1905), when it was said:

> "In construing the plat, the rule applicable in construing deeds applies, and any conflict appearing on the plat, and all doubts as to the meaning thereof, are to be construed most strongly against the dedicator and most favorably to her grantees. (Ely v. Brown, 183 Ill 575.) In Elliott on Roads and Streets (Sec 119) the author says that in construing maps and plats it is a safe general rule to resolve doubt against the donor, within reasonable limits."

The granting of the easements in question was not a voluntary gesture of the plaintiffs. Section 1 of the Plat

Act (Ill Rev Stats, c 109, § 1) requires subdividers to prepare a plat, ". . . which plat shall particularly describe and set forth all public streets, alleys, ways for public service facilities. . . ." This statutory requirement was discussed in Bluett v. County of Cook, 19 Ill App2d 172, 175, 153 NE2d 305 (1958), as follows:

> "The purpose served in requiring a housing developer to submit a plat of his proposed subdivision is to insure adequate provision for streets, alleys, *placement of utilities,* parks, playgrounds *and other public necessities indispensable in the modern residential community. . . . The effect of submitting a plat is to dedicate those portions of the premises which are marked or noted as donated or granted to the public."* (Emphasis added.)

It can be observed in passing that the logical extension of plaintiffs' position would be the creation of a complex network of numerous and unconnected private sewer systems in each community. Not only would such a result frustrate the very purpose of the Plat Act, as set forth above, but would obviously be contrary to every concept of proper city planning.

It is finally argued by the plaintiffs that they should have been permitted to testify as to their intentions when creating the easements in question. Although it has been held that the owner of property may be permitted to testify to his intention when dedicating a portion of it (Township of Lovington v. Adkins, 232 Ill 510, 517, 83 NE 1043 (1908); Miller v. Weingart, 317 Ill 179, 182, 147 NE 804 (1925)), it has similarly been consistently held that "the intent to dedicate will not be permitted to prevail against the unequivocal acts and conduct of the owner inconsistent with such intent." Township of Lovington v. Adkins, supra. In the case before us the plaintiffs submitted a plat which gave no indication whatsoever that anything other than a public

easement was intended. The Village was paid for the plans of the sewer system prepared by the Village engineer, and the Village let the contract and supervised the installation of the sewer. In addition, plaintiffs acquiesced in the continuous inspection and maintenance of the sewer system, and the charging of connection fees, by the Village. That plaintiffs paid the cost of installing the sewer system is of no contrary significance, inasmuch as it is normal and customary for subdividers to pay for all of the public improvements in the subdivided property. Indeed, this is required by ordinance in the instant case. Accordingly, we hold that the refusal of the trial court to permit plaintiffs to testify as to their intention in granting the easements was not reversible error.

Affirmed.

DAVIS, P. J. and ABRAHAMSON, J., concur.