Anne **TOMKINS**, Plaintiff,

v.

**VILLAGE OF TINLEY PARK**, et al., **Defendants.**

No. 81 C 4258.

United States District Court, N.D. Illinois, E.D.

July 21, 1986.

Lonny Ben Ogus, Chicago, Ill., for plaintiff.

Mary E. Bennett, Lord, Bissell & Brook, Chicago, Ill., for Tinley Park.

Chris Averkiou, Chicago, Ill., for other defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Plaintiff, Anne Tomkin,[1] brought this action pursuant to 42 U.S.C. § 1983 to redress alleged violations of her Fifth and Fourteenth Amendment rights. Plaintiff also alleges trespass under Illinois law. Defendants include the Village of Tinley Park and three individuals: Michael Soraghan, Sandra Soraghan, and Dean Hanson (hereinafter collectively referred to as "the individual defendants").[2] The individual defendants have filed a counterclaim alleging violations of state law. Presently pending before the Court are the parties' cross-motions for summary judgment.

## FACTS [3]

The plaintiff and the Soraghans are neighbors in the Village of Tinley Park. Mrs. Tomkin owns lot 17 on Block 13 in Parkside Subdivision; the Soraghans own lot 16.

Plat documents creating Parkside Subdivision were recorded on January 10, 1947, as document number 13974008, by the office of the Recorder of Cook County. Plat documents reflecting a resubdivision of portions of Parkside Subdivision, including Block 13, were recorded July 8, 1949, as document number 14587876, by the office of the Recorder of Cook County. Both plat documents were certified by a registered surveyor, acknowledged by the owner of the land, and approved by the President and the Board of Trustees of the Village of Tinley Park in conformance with the provisions of the Illinois Plat Act, Ill.Ann.Stat. ch. 109, § 2 (Smith-Hurd 1952). Both the 1947 and 1949 plats indicate a "10 ft. utility easement" running along the back ten feet of lots 16, 17, and the remaining lots of Block 13. The ten foot utility easement is also indicated on a plat of plaintiff's property prepared in 1956 and on plaintiff's title insurance policy dated January 23, 1968.

---

1. Plaintiff is identified on the caption of the complaint as Anne Tomkins. However, at her deposition, plaintiff indicated her name is Anne Tomkin. Therefore, Tomkin will be used in this opinion.

2. The complaint originally named the Metropolitan Sanitary District of Greater Chicago as an additional defendant and included counts pursuant to 42 U.S.C. §§ 1985(3) and 1986. The Sanitary District and the additional counts were dismissed by Judge Moran on April 26, 1983. *See, Tomkins v. Village of Tinley Park,* 566 F.Supp. 70 (N.D.Ill.1983).

3. The facts, as discussed in this section of the opinion, are not in dispute.

The houses owned by Mrs. Tomkin and the Soraghans were constructed at approximately the same time during 1952. At that time, a joint sewer line, shaped as an inverted Y, was constructed to drain sewage from the two houses to a ditch located behind the lots and just beyond the 10 ft. utility easement. Sewage from the respective houses drained through the diagonal arms of the Y to the third arm, located on the plaintiff's property, which then drained into the ditch.

In about 1954, a connector sewer was constructed by the Village of Tinley Park within the 10 ft. utility easement located at the rear of the lots in Block 13 of the Parkside Subdivision. The third arm of the joint sewer draining lots 16 and 17 was connected to the connector sewer. A manhole, providing access to the connector sewer, also was constructed on the utility easement at the rear of Mrs. Tomkin's property. The owners of lots 16 and 17 have paid, at various times, assessments and user fees for the construction, operation and maintenance of the connector line and the Village's sewer system in general. Since the construction of the connector sewer, the Village has repaired and maintained the connector sewer, in part through the use of the manhole found at the rear of Mrs. Tomkin's property.

In November 1980, the Soraghans' sewage system became blocked, leaving six inches of raw sewage in their basement and making use of their plumbing facilities impossible. Upon investigation, the Soraghans learned that their sewer was connected with Mrs. Tomkin's, and that the blockage in their sewer line was located on Mrs. Tomkin's property. Mrs. Tomkin refused the Soraghans permission to enter her property to repair the sewer line.

Mr. Soraghan contacted Village officials about this problem. After conferring with Mr. Thomas Albright, Superintendent of the Water and Sewer Department for the Village, Mr. Soraghan decided to install a new sewer line from the back of his house to the back of his property. He also requested permission from the Village to run the line along the 10 ft. utility easement on his property and on Mrs. Tomkin's property to the manhole leading into the connector sewer.

Mr. Albright agreed that this appeared to be the best resolution to the Soraghans' problem, but did not immediately give permission to the Soraghans to use the easement on Mrs. Tomkin's property. Instead, the problem was brought before the Village Board at the Board's meeting on November 18, 1980. A notice and agenda concerning the meeting was posted at the Village Hall on the previous Friday; however, no one contacted Mrs. Tomkin to inform her that the Soraghans' problem was scheduled to be discussed. The meeting of the Board was attended by the Soraghans, Mr. Albright, and Mr. Edwin Richardson, the Village's attorney. Mr. Soraghan addressed the Board, and, after discussion, the Board gave Mr. Soraghan permission to install a new sewer line across the easement and to connect it to the manhole.

Mr. Soraghan thereupon installed a new sewer line, at a depth of about four feet, along the utility easement and connected it to the manhole at that depth. All of the construction on Mrs. Tomkin's property occurred within the area of the utilities easement.

The connection was determined by the Metropolitan Sanitary District of Greater Chicago to be in violation of its Sewer Permit Ordinance due to the absence of an exterior drop connection between the Soraghans' new line and the connector line, located approximately 24 feet below the surface of the easement. The Village and the Soraghans petitioned the Sanitary District for a variance; that petition was granted on March 12, 1981.

## DISCUSSION

### A. The Section 1983 Claim.

Plaintiff's Section 1983 claim is premised upon two alleged constitutional violations: the taking of her property without compensation in violation of the Fifth and Fourteenth Amendments, and the deprivation of

her property without procedural due process in violation of the Fourteenth Amendment.

It is axiomatic that, for an individual to have a cognizable property interest, that individual must have a legitimate claim of entitlement to that interest. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Plaintiff asserts that her property interest in her homesite was violated by the defendants' physical intrusion upon the land and permanent underground placement of the new sewer pipe. Defendants assert that plaintiff's fee interest in her property was and is subject to an easement, held by the Village of Tinley Park for the benefit of the general public, that permits the installation of the sewer pipe. Therefore, defendants conclude, defendants did not violate any constitutionally protected property interest held by the plaintiff. For the reasons stated below, the Court agrees with the defendants and grants defendants summary judgment on the Section 1983 claim.

The Supreme Court has noted that property interests are not created by the Constitution.

> Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

In the instant case, the property interests asserted by the parties are creations of Illinois state law. Thus, this Court must look to Illinois law to determine the validity of the parties' claims.

It is undisputed that Mrs. Tomkin's title to her property is subject to a "10 ft. utility easement" indicated on the 1947 and 1949 subdivision plats, the 1956 plat of plaintiff's property, and plaintiff's 1968 title insurance policy. Plaintiff vigorously contests, however, defendants' assertion that this easement permits the conduct of the defendants in this action. To analyze the merits of defendants' claim, the Court must first determine what entity holds this easement.

■ As noted in the recitation of the facts, the 1947 and 1949 plats that created Parkside Subdivision were produced, certified, acknowledged, accepted and recorded in conformance with the Plat Act, Ill.Ann. Stat. ch. 109, §§ 1 *et seq.* (Smith-Hurd 1952). Section three of the Act states, *inter alia,* that "the premises intended for any street, alley, way, common *or other public use* in any city, village or town or addition thereto, shall be held in the corporate name thereof in trust to and for the uses and purposes set forth or intended." (emphasis supplied) Illinois case law has construed utilities easements as premises intended for public use as that term is used in Section three of the Act:

> The purpose served in requiring a housing developer to submit a plat of his proposed subdivision is to insure adequate provision for streets, alleys, *placement of utilities,* parks, playgrounds and other public necessities indispensable in the modern residential community. ... The effect of submitting a plat is to dedicate those portions of the premises which are marked or noted as donated or granted to the public. Ch. 109, Par. 3, Illinois Revised Statutes 1957.

*Bluett v. County of Cook,* 19 Ill.App.2d 1972, 153 N.E.2d 305, 306 (1st Dist.1958) (emphasis supplied). *See also Nichol v. Village of Glen Ellyn,* 89 Ill.App.2d 251, 231 N.E.2d 462, 465 (2d Dist.1967). Property dedicated to the public is held by the municipality in trust for the benefit of the public. *See, e.g., Schien v. City of Virden,* 5 Ill.2d 494, 126 N.E.2d 201, 204 (1955), *McPike v. Illinois Terminal Railroad Co.,* 305 Ill. 298, 137 N.E. 235, 236 (1922).

■ Applying this case law to the instant case, the Court concludes that recordation of the Parkside Subdivision plats created a ten foot easement for utilities at the rear of plaintiff's lot which is held by the Village of Tinley Park in trust for the benefit of the public. The question that

remains, therefore, is whether the installation of the new sewer pipe by the Soraghans, an activity sanctioned by the Village, constitutes an action within the grant of the utilities easement held by the Village.

Under Illinois law, if an easement dedicated to a municipality "is limited in scope or purpose, the owner of property, subject to the burden thereof, is entitled to prevent the burden of such easement from being increased." *Marlatt v. Peoria Water Works Company*, 114 Ill.App.2d 11, 252 N.E.2d 403, 405 (3rd Dist.1969) (holding that an easement for gas, electric and telephone service could not be used to install water service). However, easements created by a plat are binding on the dedicator as well as all subsequent grantees, and the "[b]enefits of easements so created may be enforced against the owners of lots burdened with such easements regardless of annoyance or detriment." *Id.* Unlike the easement at issue in *Marlatt*, the easement at issue in this action is not limited—it refers simply to "utilities." As the presence of the connector sewer installed by the Village more than 30 years ago demonstrates, the term "utilities" clearly encompasses sewer services. *See also Nichol v. Village of Glen Ellyn*, 89 Ill.App.2d 251, 231 N.E.2d 462 (2d Dist.1967).

When property is dedicated to a municipality for a designated purpose, "[i]t is for the municipal authorities to determine how ... to best facilitate that use and purpose." *City of Quincy v. Sturhahn*, 18 Ill.2d 604, 165 N.E.2d 271, 278 (1960). *See also McPike v. Illinois Terminal Railroad Co.*, 305 Ill. 298, 137 N.E. 235, 236 (1922) ("[C]ity may improve, fence, beautify, and control [property] and adopt all necessary rules and regulations concerning [its] management" for purpose of dedication.), *City of Alton v. Illinois Transportation*

*Company*, 12 Ill. 38, 59 (1850) ("[C]ity may improve and control" property for purpose of dedication "and adopt all needful rules and regulations for [its] management and use ...") *Accord Griffith v. City of Los Angeles*, 175 Cal.App.2d 331, 346 P.2d 49, 54 (Cal.Dist.Ct.App.1959); *Cheek v. Floyd County, Georgia*, 308 F.Supp. 777, 782 (N.D.Ga.1970), *Gibson v. Ocker*, 138 Ind. App. 438, 214 N.E.2d 395, 397 (1966).

Applying these legal standards to the facts of this case, the Court concludes that the Village of Tinley Park could authorize, pursuant to the utilities easement, the installation of the new sewer line serving the Soraghans' residence. The easement is for "utilities," and the sewer line clearly is a utility. Moreover, under Illinois law, the Village has substantial discretionary authority over the use of the utilities easement.[4]

■ Plaintiff, in arguing that the installation of the new line is not within the scope of the easement, makes two principal arguments. First, the plaintiff argues that the new line is for the private and sole benefit of the Soraghans, and that the easement should not be construed to allow the construction of utility lines that benefit only one landowner. However, as the Supreme Judicial Court of Massachusetts recognized in *Machado v. Board of Public Works of Arlington*, 321 Mass. 101, 71 N.E.2d 886, 888 (1947), the provision of sewer service, even if for a single house, constitutes not only a private benefit for that landowner, but a public benefit for the other residents of the municipality as well. In *Machado*, the landowners' cesspool was creating a public nuisance; in the instant case, the blockage of the Soraghans' sewer was backing up raw sewage into the Soraghans' basement. In each case, the condition presented posed an obvious public

---

4. The discretionary authority granted municipalities in using dedicated property to effect the purpose of the dedication is mirrored by the substantial discretionary authority granted by statute to Illinois municipalities "to regulate the construction, repair and use of sewers ... and to make and enforce all necessary rules and regulations for the care and protection of its sewerage system...." *Village of Fox River Grove v. Aluminum Coil Anodizing Corp.*, 114 Ill.App.2d 226, 252 N.E.2d 225, 226 (2d Dist. 1969) (statutory citations omitted). *See also La-Salle National Bank v. Village of Riverdale*, 16 Ill.2d 151, 157 N.E.2d 7, 11 (1959).

health hazard, the rectification of which represented a substantial public benefit.[5]

■ Second, plaintiff contends that the use of the easement over the plaintiff's property was not necessary to correct the Soraghans' problem and thus constituted a unjustifiable extension of the burden upon the easement. The Court rejects this argument for two reasons. First, the Court finds that plaintiff's argument is based upon a misapprehension of Illinois case law concerning a property owner's ability to prevent the burden of an easement from being increased. Where a easement is, by its terms, limited in scope, use of the easement for a purpose outside that scope represents an impermissible extension of the burden upon the servient estate. *See, e.g., Neely v. Coffey,* 81 Ill.2d 439, 43 Ill.Dec. 706, 709, 410 N.E.2d 839, 842 (1980) (easement for highway exceeded by installation of sewer), *Marlatt, supra* at 54, *Beggs v. Ragsdale,* 120 Ill.App.3d 333, 75 Ill.Dec. 637, 457 N.E.2d 1079 (5th Dist.1983) (holder of right-of-way easement could not fence easement boundary), *Triplett v. Beuckman,* 40 Ill.App.3d 379, 352 N.E.2d 458 (5th Dist.1976) (holder of easement for use of a bridge to reach an island in a lake could not replace the bridge with a causeway). However, as the *Marlatt* court noted, use of an easement for a purpose clearly within the terms of the easement may not be denied by the holder of the servient estate "regardless of the annoyance or detriment."

■ The Court has found that installation of the sewer service serving the Soraghans' home was within the clear grant of the easement for "utilities" held by the Village for the benefit of the general public. Therefore, while the installation of that line reflects, in a sense, a greater burden on the servient estate, it is a burden which is contemplated by the terms of the easement granted by the plaintiff's predecessor in interest.

■ Second, although the record is unclear as to whether installation of the new service required use of the easement on Mrs. Tomkin's property,[6] the Court finds that necessity is not a precondition to use of the easement by the Village. The uncontradicted testimony of Mr. Albright and Mr. Soraghan establishes that the only other possible method of connecting the new line to the Village's connector line (*see* footnote 6, *supra* ), even if feasible (which is assumed for the purposes of this opinion), would have been extremely expensive. Thus, even if the Village was required to

---

5. The public health risk posed by raw sewage is reflected by §§ 52.020 and 52.046 of Codified Ordinance No. 77–0–041 of the Village of Tinley Park. In November, 1980, those sections stated:
    52.020 *Prohibiting Waste on Public or Private Property.*
    No person shall place, deposit, or permit to be deposited in an unsanitary manner upon public or private property within the Village, or any area within the jurisdiction of the Village, any human or animal excrement, garbage or other objectionable waste. (Ord. 60–0–027, passed 11/7/60).
    52.046 *Defective Sewers.*
    Whenever a sanitary building sewer or drain thereto is obstructed or if found to be broken or defective so that sewerage or drainage escapes into surrounding soil, or into adjacent premises, repair or replacement may be ordered by the water works and sewerage department. Such repairs shall be at the expense of the owner or person in control of such property. (Ord. 60–0–027, passed 11/7/60).
    The obvious public health concerns posed by sewage disposal have also been noted by the Illinois Supreme Court. *See LaSalle National Bank v. Village of Riverdale,* 16 Ill.2d 151, 157 N.E.2d 7, 11 (1959).

6. At his deposition, Mr. Albright, the Village's Superintendent of the Water and Sewer Department, testified that the Soraghans could have connected the new line to the Village's connector sewer by taking the line from the Soraghans' house to the back of their yard, directly over the connector sewer, and then directly down to the connector sewer located 24 ft. below the surface of the rear of their property. Mr. Albright stated that this alternative would have been possible but extremely expensive. Albright deposition at 30–31, 47–48. In an affidavit submitted with the Village's motion for summary judgment, Mr. Albright states that "given the site conditions, there was no other feasible practical alternative method" of installing a new sewer line for the Soraghans other than using the easement across the plaintiff's property. It is unclear whether Mr. Albright's assessment of feasibility is based on monetary considerations or physical impossibility.

state a rational reason for the exercise of its easement rights, the Village has met that burden. Plaintiff has cited no authority for the proposition that an entity exercising a property right embodied in an easement must show strict necessity for the exercise of that right.

■ The Court concludes that the Village's grant of permission to the Soraghans to use the utilities easement on the back ten feet of the plaintiff's property was a lawful and legitimate use of the easement held by the Village for the benefit of the general public, including the Soraghans. The actions taken by defendants were taken pursuant to a preexisting property right held by the Village. That right, embodied in the easement, represents by definition a corresponding diminution in the property interest held by the plaintiff in the land burdened by the easement. Consequently, no constitutionally protected property interest held by the plaintiff was violated by the defendants,[7] and plaintiff's Section 1983 claim must fail.

### B. The Pendent and Ancillary State Law Claims.

Count II of plaintiff's complaint states a cause of action under the Illinois common law of trespass. This count is pendent to the Section 1983 claim embodied in Count I of the complaint. The individual defendants filed a compulsory counterclaim, pursuant to Fed.R.Civ.P. 13(a), alleging that the plaintiff's failure to allow the Soraghans entry onto her property to repair the existing residential sewer line was wrongful under state law. The Court holds ancillary jurisdiction over this counterclaim. *See American National Bank and Trust*

Co. of Chicago v. Bailey, 750 F.2d 577, 583 (7th Cir.1984), *cert. denied*, 471 U.S. 1100, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985).

Although the district courts have discretionary power to retain pendent and ancillary claims after the underlying federal claim has been fully adjudicated, the Seventh Circuit has repeatedly "indicated a strong preference for the dismissal of pendent or ancillary claims whenever the district court disposes of the federal claim or claims prior to trial." *United States v. Zima*, 766 F.2d 1153, 1158 (7th Cir.1985). *See also Bailey*, 750 F.2d at 581, 584. Indeed, the Seventh Circuit has recently indicated dismissal of pendent claims when all federal claims are disposed of prior to trial is mandatory absent "pressing reasons for retention." *Blau Plumbing, Inc. v. S.O.S. Fix-it, Inc.*, 781 F.2d 604, 612 (7th Cir. 1986). *See also Graf v. Elgin, Joliet and Eastern Railway Co.*, 790 F.2d 1341, 1344 (7th Cir.1986).

■ No pressing reasons for retention of jurisdiction over the state law claims exist in this action. As the court noted in *Bailey*, 750 F.2d at 581, Ill.Ann.Stat. ch. 110, ¶ 13–217 tolls the statute of limitations on state law claims when a claim is dismissed by a federal district court for lack of subject-matter jurisdiction. Therefore, dismissal of the state claims herein will not bar reassertion of those claims in state court. Moreover, the individual defendants' counterclaim poses difficult questions concerning interpretation of the Illinois Drainage Code, Ill.Ann.Stat. Ch. 42, §§ 2–8, 2–11. Given the absence of pressing reasons for federal adjudication of these claims, the Illinois state courts should be allowed the

---

**7.** Plaintiff's complaint states that defendants' installation of the new sewer line damaged her landscaping and fence. *See,* complaint at 19. Although the Court has held that defendants held a property right, pursuant to the easement, to install the new sewer line, that does not mean that defendants could, with impunity, unnecessarily damage plaintiff's property in the process. Mr. Soraghan, at his deposition, testified that care had been taken to leave all bushes and the fence in the condition in which they were found prior to the construction. This evidence has not

been contradicted by plaintiff. However, even if it had been, the most that plaintiff would be claiming is that the defendants were negligent in completing the work on plaintiff's property—plaintiff has never alleged that defendants' intent was to harm her landscaping or injure her fence. Thus, plaintiff would state only a claim for negligence, which is insufficient to state a claim under Section 1983. *See Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

opportunity to review these claims should the counter-plaintiffs wish to pursue them.

## CONCLUSION

Plaintiff's motion for summary judgment is denied. Defendants' motions for summary judgment are granted in part and denied in part. Defendants are granted summary judgment on Count I of plaintiff's complaint; that count is dismissed with prejudice. Count II of plaintiff's complaint is dismissed without prejudice for lack of subject-matter jurisdiction. Counter-plaintiffs' counterclaim is dismissed without prejudice for lack of subject-matter jurisdiction. The Clerk is hereby ordered to enter judgment accordingly.