Stephen E. **EBERHARDT**, Plaintiff,

v.

Jack O'MALLEY, Individually, Kenneth L. Gillis, Patrick O'Brien, Dean Morask, Michael Shabat, and Kenneth Malatesta, all Individually, Defendants.

No. 92 C 6787.

United States District Court, N.D. Illinois, E.D.

May 6, 1993.

Thomas Allan Appel, Appel & Appel, Ltd., Lansing, IL, for plaintiff.

Terry L. McDonald, Randolph Mitchell Johnston, Karen J. Diamond, Cook County State's Attorney's Office, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ANDERSEN, District Judge.

Defendants bring a motion to dismiss plaintiff's complaint for failure to state a claim on which relief can be granted pursuant to Rule 12(b)(6) of the Fed.R.Civ.P. For the following reasons, defendants' motion is granted.

### FACTS

The court accepts the following relevant allegations in plaintiff's complaint as true for purposes of this motion to dismiss:

Plaintiff, Stephen E. Eberhardt, was hired in 1982 as an Assistant State's Attorney in Cook County, Illinois to work in the Appeals Division. In 1990, plaintiff began working on a "fictional novel involving fictitious prosecutors and other persons in the criminal justice system." In November of 1990, plaintiff asked a fellow Assistant State's Attorney, Judy Mondello, to review a draft manuscript of his novel and offer her comments. In December, 1990, Ms. Mondello wrote a letter to defendant Patrick O'Brien, Chief Deputy State's Attorney—Criminal, complaining of plaintiff's manuscript. Ms. Mondello claimed that a certain home described in the manuscript appeared to be the home of her parents in St. Louis, Missouri, and that plaintiff must have obtained this personal information by following and spying on her.

On December 10, 1990, O'Brien called Eberhardt into his office to discuss Ms. Mondello's charges. During the meeting, O'Brien expressed concern over what he termed "office confidences" appearing in the manuscript. In response to plaintiff's explanation that all characters and locations in the manuscript were a consolidation of persons

and places he had become familiar with during his career as a police officer and a prosecutor, O'Brien asked, "How can I leave you in a trial court if whatever you learn will appear in a book someday?" O'Brien informed plaintiff that he was being temporarily transferred from the Felony Trial Division to the Special Remedies Unit while Ms. Mondello's allegations of sexual harassment and invasion of privacy were being investigated.

O'Brien called the State's Attorney's Coordinators in the Fifth and Sixth Municipal Districts and asked them to interview all female Assistant State's Attorneys in their districts to ask them if the plaintiff had ever sexually harassed them. These interviews were carried out, and this, along with open discussion of the charges by defendants, resulted in the charges becoming common knowledge among personnel in the Cook County State's Attorney's Office and other persons working within the criminal justice system in Cook County.

Plaintiff claims that his transfer to the Special Remedies Unit was generally considered to be a substantial demotion within the office, although he concedes that he earned the same pay he received before the transfer. Plaintiff remained in this unit for almost fourteen months, during which time he was never advised whether the investigation had been completed or whether the charges against him had been substantiated. During this time, plaintiff received only about five hours of work per week. He made several requests for a transfer from the Special Remedies Unit, none of which were responded to by any of the defendants.

On January 30, 1992 defendant Kenneth Gillis, First Assistant State's Attorney, called plaintiff into his office for a meeting with him and O'Brien. Upon his arrival, Gillis advised plaintiff that he was being terminated because "between vacation and sick time [he had] been gone quite a bit."

Plaintiff filed a complaint naming Cook County State's Attorney Jack O'Malley and five other supervisory-level State's Attorneys as defendants. Counts I–III allege violations of 42 U.S.C. § 1983 ("§ 1983"). In Counts I and II, plaintiff specifically alleges that his First Amendment rights were violated, claiming he was demoted and eventually terminated in retaliation for writing the manuscript. In Count III, plaintiff specifically alleges that he was deprived of a liberty interest without due process in violation of the Fourteenth Amendment, claiming that the defendants disseminated false and stigmatizing charges against him in connection with his termination without providing him an opportunity to clear his name. In Count IV, plaintiff claims he was terminated in retaliation for requesting to view his personnel file. Finally, Counts V and VI claim that the defendants, by inducing and carrying out the termination of his employment with the Cook County State's Attorney, intentionally and maliciously interfered with plaintiff's employment relationship with the State's Attorney. Defendants move to dismiss the complaint for failure to state a claim on which relief can be granted.

## DISCUSSION

### Standard of Review

On a motion to dismiss under Fed. R.Civ.P. 12(b)(6), the court views all well-pled allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff. *Bethlehem Steel Corp. v. Bush,* 918 F.2d 1323 (7th Cir.1990). The complaint must state either direct or inferential allegations concerning all material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus,* 603 F.2d 1266, 1269 (7th Cir.1979). Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transp. Services, Inc.,* 795 F.2d 591, 594 (7th Cir.1986).

### First Amendment Claim

A state has a legitimate interest as an employer in regulating the speech of its employees that differs significantly from those it possesses with respect to regulating the speech of the general citizenry. *Egger v. Phillips,* 710 F.2d 292, 313 (7th Cir.1983), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (quoting *Pickering v. Board of*

*Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811, 817 (1968)). The State's Attorney has a special interest in maintaining an atmosphere of mutual trust among Assistant State's Attorneys who normally work in close-knit teams.

■ This interest must be weighed against an employee's First Amendment protections. Thus, when dealing with the speech of public employees, the Supreme Court has ruled that only speech which may be "fairly characterized as constituting speech on a matter of public concern" will be protected. *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708, 719 (1983). The relevant inquiry for determining whether speech touches on a matter of public concern is whether the employee is, in effect, speaking as a private citizen upon matters of public concern or instead as an employee upon matters only of personal interest. If it is the latter, then "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147, 103 S.Ct. at 1690, 75 L.Ed.2d at 720. While this issue is tied closely to the facts of a given case, it is a question of law for the court to resolve. *Colburn v. Trustees of Indiana Univ.*, 973 F.2d 581, 585 (7th Cir.1992), *reh'g en banc denied.*

The public concern test set forth in *Connick* addresses situations in which a public employee speaks about a matter dealing either with his work or the general work of the public agency employing him. The purpose of the public concern test in this context is to differentiate between those cases in which the employee is attempting to discuss matters of genuine public interest from matters of purely personal interest. *See, e.g., Connick*, 461 U.S. at 148, 103 S.Ct. at 1691, 75 L.Ed.2d at 721; *Colburn*, 973 F.2d at 587.

Because plaintiff's novel is based on his experiences at the State's Attorney's Office, it touches upon matters relating to his work and is thus appropriately subject to the public concern inquiry.

The Supreme Court in *Connick*, while deliberately declining to lay down a general standard that would govern in all situations, held that the relevant inquiry should be whether the speech at issue would be of public import in evaluating the performance of the State's Attorney as an elected official. *Connick*, 461 U.S. at 148, 103 S.Ct. at 1690, 75 L.Ed.2d at 721. Subsequent interpretations of *Connick* hold that the court must look to the point of the speech in question; "was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?" *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir.1985). *See also Colburn*, 973 F.2d at 586–87; *Breuer v. Hart*, 909 F.2d 1035, 1039 (7th Cir.1990).

The only allegations contained in the complaint that provide insight into the content of the manuscript are first, that it is a "fictional novel involving fictional prosecutors and other persons in the criminal justice system," second, that it is a "consolidation of persons and places Eberhardt had become familiar with during his careers as a police officer and a prosecutor," and third, "that the manuscript did in fact contain a partial description of the home of Mondello's parents." Plaintiff contends that such a commentary on the actions of prosecutors and the workings of the criminal justice system addresses a fundamental matter of legitimate public concern.

The fact that plaintiff's manuscript was primarily fictional does not prevent the speech contained within from being deemed of public concern. Writing a fictional novel based on events that have actually transpired within a public agency could certainly be an effective means of revealing to the public that the agency is not properly discharging its governmental responsibilities, or of bringing to light actual or potential wrongdoing or a breach of public trust on the part of officials within that agency.

The most favorable inference that can be drawn from the facts alleged, however, is that the plaintiff has written a fictional piece which may provide interesting insight into the workings of the criminal justice system. The complaint contains no allegations that the manuscript contains speech which would inform the public about potential wrongdoing

within the State's Attorney's Office or that addresses other matters of public import. A novel of this nature cannot fairly be characterized as addressing "a matter of legitimate public concern" for which "free and open debate is vital to informed decision-making by the electorate." *Pickering*, 391 U.S. at 571–72, 88 S.Ct. at 1736, 20 L.Ed.2d at 819. "People may be interested in any number of the aspects of the lives of public officials and employees, but that does not mean that such matters have societal ramifications." *Egger*, 710 F.2d at 317. The lack of any allegation in the complaint giving rise to an inference that the speech in the manuscript rises to the level of public concern contemplated by *Connick* and its progeny precludes jurisdiction in this court.

Because the plaintiff has failed to allege that the speech contained in the manuscript touched upon matters of public concern, he has failed to set out a claim for a violation of his First Amendment Rights. As a result, Counts I and II of the complaint are dismissed.

*Fourteenth Amendment Claim*

Plaintiff asserts that he has been deprived of a protected liberty interest in violation of the Fourteenth Amendment. A government employee's liberty interests are implicated when in terminating the employee, the government makes a "charge against him that might seriously damage his standing or associations in the community," or imposes "a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548, 558–59 (1972). To prevail on such a claim, the plaintiff must generally plead and prove that there was a tangible change in his status, that the charges against him are false, that the charges were stigmatic, that the charges were published or publicly disseminated, and that the plaintiff was deprived of a name-clearing hearing in the wake of such charges. *Dziewior v. City of Marengo*, 715 F.Supp. 1416, 1423 (N.D.Ill.1989). Because the plaintiff has failed to allege sufficient public disclosure of the charges that he sexually harassed and invaded the privacy of a col-

league, his Fourteenth Amendment Claim must be dismissed.

A deprivation of liberty is not implicated when an at-will government employee is discharged and there is no public disclosure of the reasons for the discharge. *Johnson v. Martin*, 943 F.2d 15 (7th Cir.1991) (citing *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684, 692 (1976)). Absent an allegation that the defendants disseminated the stigmatizing information beyond the appropriate chain of command within the State's Attorney's Office, the plaintiff cannot survive the motion to dismiss. *McMath v. City of Gary*, 976 F.2d 1026, 1033 (7th Cir.1992).

While it is certainly open to question, the court will assume for purposes of analysis that the charges made against plaintiff remained in existence from December, 1990 to the time of plaintiffs termination in January, 1992, so as to provide the required nexus between the firing and the charges of wrongdoing. *See Id.* at 1032–33. The court will also assume that the charges of sexual harassment and invasion of privacy are of such a nature as to implicate plaintiff's liberty interest.

While cases addressing the issue of public disclosure often speak of disclosure beyond the "proper chain of command" within the department, they have tended to require broad publication:

> In a common law defamation action, any publication of false and defamatory material might be sufficient, but in the context of the liberty interest protected by the Fourteenth Amendment, [the plaintiff is] required to show broader publication ... Absent proof that the ... defendants disseminated the stigmatizing information in a manner which would reach future potential employers of the plaintiff or the community at large, she cannot show that the defendants' actions impinged on her liberty interest in pursuing her occupation.

*Ratliff v. City of Milwaukee*, 795 F.2d 612 (7th Cir.1986).

The complaint alleges that the defendants publicized the charges by initiating interviews with all female Assistant State's Attor-

neys in the Fifth and Sixth Municipal Districts to ask them if the plaintiff had ever sexually harassed them, and by openly, discussing the charges while in the office.

The plaintiff has only alleged that the defendants made the charges known within the State's Attorney's Office. The complaint contains no allegation that any of the defendants disseminated the charges in a manner likely to reach future potential employers or the community at large. The gravamen of the liberty interest at stake here is post employment reputation as it relates to the plaintiff's ability to pursue his occupation. The complaint fails to allege publication of the charges in a manner that would impinge upon this liberty interest. According to the complaint, none of the defendants informed anyone outside the State's Attorneys Office of the reasons for plaintiff's transfer and subsequent termination.

While defendants' discussions of the matter within the office may have created a possibility that others outside the office might have learned of the charges, "the publication requirement is not satisfied with the mere existence of a likelihood of public disclosure." *Id.* at 1035. The named defendants themselves must be responsible for the dissemination outside the State's Attorney's Office. In *McMath, supra,* several members of the plaintiff's community learned of the reasons for his dismissal. Even so, the plaintiff did not prevail because he failed to link any of the communications outside of the office to the defendants. Such is the case here.

Because the complaint does not allege publication by the named defendants of the alleged reasons for his termination, it fails to set out a violation of his Fourteenth Amendment rights. Count III of the complaint is therefore dismissed.

*State Law Claims*

The remaining state law claims are supplemental to the § 1983 claims embodied in Counts I through III of the complaint. Although the district court has discretionary power to retain supplemental claims after the underlying federal claims have been dismissed, the Seventh Circuit has repeatedly indicated a strong preference for the dismissal of supplemental claims when all federal claims are disposed of prior to trial. *Tomkins v. Village of Tinley Park,* 651 F.Supp. 50, 56 (N.D.Ill.1986), *aff'd without opinion,* 840 F.2d 20 (7th Cir.1988).

Because no reasons for retention of jurisdiction over the state law claims have been presented to the court, it declines to retain supplemental jurisdiction over them. Accordingly, Counts IV, V, and VI of the complaint are dismissed.

## CONCLUSION

The defendants' motion to dismiss plaintiff's complaint is granted. The complaint is dismissed in its entirety.

It is so ordered.